UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GREGORY WENDELL WOOD, et al., Plaintiffs, v. KIRSTJEN NIELSEN, et al., Defendants. | Case No. 18-cv-00281-DMR<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 17, 22 |

Plaintiffs Gregory Wood ("Wood") and Young Ja Ko ("Ko") filed this case under the Administrative Procedures Act ("APA"), 5 U.S.C. § 701 *et seq.*, seeking review of Defendant United States Citizenship and Immigration Services's ("USCIS") decision to deny the Petition for Alien Relative (Form 1-130) that Wood filed on behalf of Ko. The parties submitted cross-motions for summary judgment. [Docket Nos. 17 (Def. Mot.), 22 (Pltf. Mot.).] For the reasons stated below, the court grants Defendants' motion and denies Plaintiffs' motion.

## I.   STATUTORY FRAMEWORK

A non-citizen spouse of a United States citizen may obtain lawful permanent residence status if the citizen files a Form I-130 on behalf of the non-citizen beneficiary to classify her as an "immediate relative." 8 U.S.C. § 1154(a)(1)(A)(i). The petitioner bears the burden of proving by a preponderance of the evidence that the beneficiary is eligible to receive the benefits of the I-130 petition. 8 U.S.C. § 1361. Once "a petitioner of an immediate relative petition proves that his marriage meets the requirements for the approval of an I–130, he is entitled, as a matter of right, to the approval of his petition." *Ching v. Mayorkas*, 725 F.3d 1149, 1155 (9th Cir. 2013).

## II.   BACKGROUND

Wood is a U.S. citizen who was born in Richmond, California. [Docket 18-1 (A.R.) at 2.] Ko is a citizen of South Korea. A.R. 2. Ko was admitted to the United States on November 25, 2004 on a F1 student visa to attend Pacific International College of English. A.R. 133 (NTA). Her school program ended on January 31, 2012. A.R. 133. Wood and Ko married on June 4, 2011 in

Reno, Nevada. A.R. 2, 96, 170.

On September 12, 2011, Wood submitted his first Form I-130 petition on behalf of Ko. A.R. 164-166. Ko concurrently filed a Form I-485, seeking to adjust her status to lawful permanent resident. A.R. at 139-147. USCIS denied Wood's first I-130 petition on May 10, 2012. A.R. at 160-163 (2012 Decision). Wood did not appeal the denial. Wood submitted a second I-130 petition on October 29, 2013. A.R. at 95-100. USCIS denied the second Form I-130 on March 19, 2018. A.R. at 1-11 (2018 Decision). Plaintiffs now seek review of the denial of Wood's second Form I-130.

### A. First Form I-130 Petition

Wood filed his first Form I-130 on September 12, 2011. A.R. 139-147. Wood submitted evidence in support of his petition, including:

- Identity documents for Wood, including his birth certificate, U.S. Passport, and California Driver's License (A.R. 167-169)
- A marriage certificate, dated June 4, 2011, certifying the marriage of Wood and Ko (A.R. 170)
- Judgment for Dissolution of Marriage, dated April 21, 1989, showing the dissolution of marriage between Wood and his prior spouse (A.R. 171)
- Blank checks issued by Mechanics Bank in Wood and Ko's name (A.R. 172)
- Bank statements from Mechanics Bank showing Wood and Ko as joint account holders (A.R. 178-181)
- An unsworn, unnotarized affidavit dated April 17, 2012, by Wanda Silverthorn, Wood's sister, attesting that Wood and Ko were married[1] (A.R. 173)
- An unsworn, unnotarized affidavit dated April 25, 2012, by Rhonda Day, Wood's sister, attesting that Wood and Ko were married (A.R. 174)
- A notarized, unsworn affidavit dated December 22, 2011, by Christian Moor, Ko's brother-in-law, attesting that he and his wife, Seja Koh, attended the wedding ceremony of Ko and Wood on June 4, 2011 (A.R. 175)
- A notarized, unsworn affidavit dated December 22, 2011, by Seja Koh, Ko's sister,

---

[1] The affidavit incorrectly lists the date of marriage as "June of 2012" instead of June 2011. A.R. 173.

2

attesting that she introduced Ko and Wood on February 4, 2011, and attended their wedding ceremony on June 4, 2011 (A.R. 176)

- A temporary automobile insurance contract, dated August 30, 2011, listing both Ko and Wood as co-insured drivers (A.R. 177)
- Copies of eight photos of Wood and Ko, four of which were from their wedding ceremony (A.R. 182-187)

Some evidence is referenced but does not appear in the record, such as an interim driver's license for Ko, and Wood's 2011 tax return. *See, e.g.*, 2012 Decision at 162.

In reviewing Wood's first I-130 petition, USCIS interviewed Wood and Ko separately on April 30, 2012.[2] 2012 Decision at 161. During her interview, Ko was assisted by Jin Soo Park, a translator provided by Wood's attorney.

USCIS found several inconsistencies between Wood and Ko's testimony. First, when describing how the two met, Wood testified that he first met Ko at his friend Christian Moor's house. 2012 Decision at 161. He said that Ko's sister, Seja Koh, greeted him at the door and he saw Ko for the first time seated in the leaving room. *Id.* In contrast, Ko testified that the two first met when Wood came to pick her up at an airport. *Id.* When asked about the discrepancy, Wood replied, "Oh that [the airport] is where we met…I take that back…I was thinking of when we met to become a couple…I heard it wrong." *Id.*

Second, Wood testified that he offered Ko a place to stay in his guest bedroom in March 2011. 2012 Decision at 161. *Id.* However, Ko testified that they shared a room and a bed from the beginning. When asked about the discrepancy, Wood replied, "I lied to you…I am sorry…" *Id.*

Third, Wood testified that one of Ko's sons lives in Los Angeles where he goes to school, and the other son lives in Oklahoma. 2012 Decision at 161. Wood said that he met the son who lives in Los Angeles but not the son who lives in Oklahoma. *Id.* In contrast, Ko testified that she has a son who lives in Oklahoma and the other son lives in Korea. *Id.* She said the son who lives in Korea used to go to school in Long Beach but moved back to Korea in October 2011. *Id.* Ko

---

[2] Respondents say that Wood and Ko were interviewed twice, the first time on January 4, 2012, but Petitioners contest that they were not actually examined on that day. Def. Mot. at 4; Pltf. Mot. at 4. In the decision on Wood's first Form I-130, the Field Officer Director states that on January 4, 2012, Wood and Ko "appeared for a scheduled interview in connection with the visa petition [and] it was determined that further questioning was needed in regards to the bona fides of the relationship." 2012 Decision at 161.

3

stated that this son visited her a few weeks before the interview and met Wood at that time. *Id.* When confronted about the discrepancy about where that son lives, Wood said, "I have hardly spoken to her about the sons…I don't know for sure. I met the son from Los Angeles a few weeks back." *Id.*

Fourth, when Wood and Ko were asked what they did on April 22, 2012, eight days before the interviews, Wood stated that he went to his sister's home in Hercules, California, but Ko stated that she went to Santa Rosa, California with Wood. 2012 Decision at 162. When asked about the discrepancy, Ko reviewed a calendar and amended that she had actually been in Los Angeles on that date. *Id.*

Fifth, when asked about which of them proposed marriage, Wood stated that he asked Ko to marry him in April 2011. 2012 Decision at 162. However, Ko stated that she asked Wood to marry her. *Id.* When asked about the discrepancy, Wood reiterated that he asked Ko to marry him. *Id.*

USCIS found that "the information provided by [Wood] and [Ko] was not indicative of two people who lived together as husband and wife, or had a common knowledge of shared experiences." 2012 Decision at 162. The decision also stated that "considerable effort was given to you by the interviewing Officer to reconcile the differences." *Id.*

In reviewing the documentary evidence, USCIS gave little weight to the bank statement from Mechanics Bank because the account appeared to only be used by Wood, and Ko testified that she uses her own Wells Fargo account. 2012 Decision at 162. USCIS also gave the car insurance documentation little weight because it was only for the cars owned by Ko, and it did not appear that Wood had added Ko to his car insurance. *Id.* The decision did not discuss the weight afforded to the other documentation that had been submitted by Wood.

USCIS denied Wood's first I-130 petition on May 10, 2012, concluding that the petition "was not valid and that the marriage between [Wood] and [Ko] was created for Immigration [*sic*] purposes only and was not valid for conferring immigration benefits." 2012 Decision at 163. USCIS did not send a Notice of Intent to Deny ("NOID") prior to denying the petition. Pltf. Mot. at 5.

On August 3, 2012, Immigration and Customs Enforcement ("ICE") initiated removal proceedings against Ko by filing a Notice to Appear in Immigration Court. A.R. 134 (NTA). The NTA alleged that Ko was removable from the United States because she was admitted as on a F1

4

student visa to attend Pacific International College of English; that her school program ended on January 31, 2012; and that she remained in the United States beyond January 31, 2012. NTA at 134.

### B. Second Form I-130 Petition

On October 14, 2013, Wood filed a second Form I-130 on behalf of Ko. A.R. 95-131. Wood submitted documentation supporting his petition. Some of the documentation was duplicative of what Wood had filed in support of his first petition, including the divorce decree for Wood's prior marriage; the marriage certificate for Wood and Ko; and the notarized affidavit of Moor. The other documentation submitted included:

- The divorce decree from Ko's prior marriage, dated August 14, 2003 (A.R. 103)
- A translated copy of Ko's birth certificate (A.R. 106-107)
- More recent bank statements from the joint bank account at Mechanics Bank (A.R. 108-109)
- Health insurance cards naming both Wood and Ko as insureds, effective date September 1, 2013 (A.R. 110)
- A membership receipt to 24-Hour Fitness in Richmond, CA, dated December 29, 2011 (A.R. 111)
- A 2012 joint tax return for Wood and Ko (A.R. 112-124)
- Three photographs of Wood and Ko together, undated (A.R. 126-128)

On December 15, 2014, Wood and Ko were interviewed in connection with the second Form I-130. A.R. at 6, 189. The content of that interview is not in the record.

On June 4, 2015, two USCIS officers made an unannounced site visit to Wood's residence in Richmond, CA. A.R. 86-90. Wood was present, but Ko was not. Wood signed a document indicating that he would talk to the officers without his attorney present.[3] A.R. 91. Wood told the USCIS officers that Ko had been at her sister's home in San Rafael, California for about a week and he had not spoken to her during that time. A.R. 88. When asked how long he and Ko had been

---

[3] The document is a form notice of appearance by Sunmin Lee as attorney for Wood. A.R. 91. There is a handwritten note on the form, "6/4/15 ck to interview Attorney waived," and Wood's signature appears below the note. *Id.* The parties do not dispute that this document was presented to Wood during the site visit, Wood signed it, and the intent of the form was to seek waiver of Wood's right to counsel during that interview. As discussed further below, the parties dispute whether Wood was "induced" to sign the waiver.

married, Wood replied "six, four, or five years." A.R. 88. Wood told the officers that he had met Ko through his friend "Chris," (referring to Moor) and that Chris had told Wood about Ko's "situation." When the officers asked Wood what he meant about Ko's "situation," Wood replied that he did not want her to get deported. A.R. 89.

When the USCIS officers asked to see Wood and Ko's bedroom, Wood replied that they had been living in separate bedrooms since six months after the wedding. A.R. 89. The room Wood identified as Ko's had a "shelving unit with bedding, a pad on the floor to sleep on, and a closet with minimal women's clothing." A.R. 89. In the bathroom, there were men's toiletries and dog shampoo, but no women's toiletries. A.R. 89. There were no pictures of Wood and Ko together in the home. A.R. 89. Based on their observations, the USCIS officers concluded that Ko was not living at Wood's residence. A.R. 90.

On November 19, 2015, USCIS issued an NOID regarding the second Form I-130, which provided Wood with notice that he had thirty days to rebut the allegations in the NOID and submit additional evidence. A.R. 81-85. The NOID largely focused on the information gathered during the site visit on June 4, 2015. A.R. 82-83. It stated that the "testimony and documentary evidence in the record did not establish the claimed relationship." A.R. 82. The NOID claimed that the documents and photos submitted in support of the second Form I-130 were the same ones submitted in support of the first Form I-130.[4] A.R. 83.

In response to the NOID, Wood submitted additional documentation regarding his marriage. Some of this had been previously submitted in support of Wood's two petitions, including the affidavit from Seja Koh; the gym membership receipt for 24-Hour Fitness; and older bank statements from Mechanics Bank. A.R. 27, 28, 30-34 He also submitted a sworn declaration that his marriage to Ko was bona fide; copies of text messages between "Hubby" and an unknown recipient (illegible); a copy of the parties' 2014 joint tax return; more recent bank statements from Mechanics Bank; bus tickets and receipts for travel between San Francisco and Los Angeles in January 2013; additional photos of Wood and Ko together; and an Interspousal Transfer Grant Deed,

---

[4] This claim is not accurate. While some of the documentation submitted in support of the second Form I-130 was duplicative of the first petition, Wood also submitted additional documentation such as the health insurance cards and the gym membership receipt. While the photos in the record are difficult to see, it appears that the photos submitted in support of the second Form I-130 are not the same as those submitted in support of the first petition. *See* A.R. 126-128; 182-187.

6

dated April 16, 2014, adding Ko's name to the deed on Wood's house. A.R. 19-20, 22-24, 26, 35-39, 41-53, 54-58, 59-67, 68-70.

USCIS denied the second petition on March 19, 2018. A.R. 1-12 (2018 Decision). The decision considered all documentary evidence submitted in support of both petitions, testimony from Ko and Wood, and the site visit to Wood's home on December 15, 2014.

With respect to the testimony given by Wood and Ko, the decision reiterated the inconsistent testimony identified in the 2012 decision and determined that the sworn testimony was inconsistent "on issues that go to the heart of your marriage." 2018 Decision at 3. The decision further stated that "you were given the opportunity to resolve or explain the aforementioned discrepancies but you could not reasonably resolve or explain them." *Id.* at 3-4. The decision did not detail the content of the interview conducted for the second Form I-130, but concluded that the "collective testimonies during the interview on December 15, 2014 were insufficient to overcome the previously noted discrepancies in testimony which resulted in your first Form I-130 being denied on May 10, 2012." *Id.* at 6. USCIS accordingly determined that "the testimony provided by [Wood] and [Ko] was not indicative of two people who lived together as husband and wife, or had common knowledge of shared experiences." *Id.* at 4.

USCIS also examined all the documentary evidence submitted in support of both petitions and in response to the NOID. It accorded little weight to the affidavits of Moor, Koh, Silverthorn, and Day, because "none of these affidavits address your relationship to the beneficiary in any meaningful detail." 2018 Decision at 2. USCIS found that the statements from Mechanics Bank were insufficient evidence that Wood and Ko commingled funds, since Ko testified that she had her own Wells Fargo account and it appeared that only Wood used the Mechanics Bank account. *Id.* at 3, 5. USCIS afforded little weight to the tax returns submitted for 2011, 2012, and 2014, since they were only copies of what Wood claimed to file rather than official IRS transcripts. *Id.* at 3, 5. USCIS found that the photographs were evidence that Wood and Ko attended their wedding together and visited other people and places together. *Id.* at 3, 6, 8. USCIS gave little weight to the Interspousal Transfer Grant Deed because Wood did not explain why he waited three years to add Ko's name to the deed, and only did it after filing the second Form I-130. *Id.* at 5. For the health insurance documents, USCIS determined that the evidence seemed to be created solely for the purpose of the second Form I-130 since it had been obtained only one or two months before Wood

filed his second petition. *Id.* at 5-6. USCIS afforded little weight to the shared gym membership because there was no evidence of the active date of the membership or that Wood and Ko ever made use of it. *Id.* at 6. For the other documents submitted to show that Wood and Ko shared an address, USCIS stated that they are "evidence that [Wood] and [Ko] presented [themselves] as having the same mailing address to an insurance company, banks, and the U.S. government," but it appeared that none of the issuing entities verified that Wood and Ko lived at the same address. *Id.* at 4-5. USCIS determined that the bus tickets between the San Francisco Bay Area and Los Angeles did not show that Wood visited Ko in Los Angeles because there was no evidence that Ko was actually in Los Angeles at the times stated on the tickets. *Id.* at 7-8. USCIS gave little weight to the text messages between "Hubby" and an unknown recipient because the identities of the sender and receiver could not be established. *Id.* at 8. Examining the documentary evidence as a whole, USCIS concluded that the evidence was "insufficient to overcome the significant, unresolved inconsistencies between" Wood and Ko's testimony. *Id.* at 9.

For the site visit conducted on June 4, 2015, USCIS detailed the evidence found by the officers as well as the oral statements made by Wood at that time. 2018 Decision at 6-8. It also examined the declaration that Wood submitted in response to the NOID and determined there were inconsistencies between that declaration and Wood's statements to the USCIS officers who conducted the site visit. *Id.* at 9. Specifically, Wood told the officers that he and Ko began sleeping in separate bedrooms about six months after they were married, which would have been late 2011 or early 2012. *Id.* at 6. In his later declaration, however, Wood stated that he and Ko began sleeping in separate bedrooms "early this year," referring to the year 2015. *Id.* at 9. USCIS found that the "significant discrepancy is material in that it goes to the heart of your marriage, and it also reduces the overall credibility of your entire testimony regarding the bona fides of your claimed relationship to the beneficiary." *Id.*

On January 12, 2018, Wood and Ko initiated this action by filing a complaint for mandamus and injunctive relief, asking the court to compel USCIS to issue a final decision on Wood's second Form I-180. [Docket No. 1.] On March 19, 2018, the USCIS Field District Director denied the second Form I-180. Following the decision by USCIS, Plaintiffs amended their complaint to challenge the adverse decision under the APA. [Docket No. 12 (FAC).] The parties filed cross-motions for summary judgment.

8

### III. STANDARD OF REVIEW

In cases involving review of a final agency determination under the APA, a district court's role is not fact-finding. *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1472 (9th Cir. 1994). "[T]he function of the district court is to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did." *Occidental Eng'g Co. v. I.N.S.*, 753 F.2d 766, 769 (9th Cir. 1985). The reviewing court must "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). "Review under the arbitrary and capricious standard is deferential." *Nat'l Ass'n of Home Builders v. Defs. of Wildlife*, 551 U.S. 644, 658 (2007). A court should not vacate an agency's decision unless it has "relied on factors which Congress had not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Id.* (quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)).

Judicial review of agency decisions is "especially deferential in the context of immigration policy." *Jang v. Reno*, 113 F.3d 1074, 1077 (9th Cir. 1997). "To determine whether an agency violated the arbitrary and capricious standard, [the] court must determine whether the agency articulated a rational connection between the facts found and the choice made." *Ariz. Cattle Growers' Ass'n v. U.S. Fish & Wildlife,* 273 F.3d 1229, 1236 (9th Cir. 2001). In order for the court to confirm the agency's decision as rationally connected to the facts, the agency must have considered "substantial evidence" that supported its decision. *See Nakamoto v. Ashcroft,* 363 F.3d 874, 881–82 (9th Cir. 2004) (applying substantial evidence standard in evaluating marriage fraud in immigration case). "To reverse under the substantial evidence standard, the evidence must be so compelling that no reasonable factfinder could fail to find the facts were as the [plaintiff] alleged." *Singh v. Reno*, 113 F.3d 1512, 1514 (9th Cir. 1997).

//
//
//

## IV. ANALYSIS

### A. Burden of Proof

Plaintiffs concede that an applicant for a Form I-130 bears the burden of proving by a preponderance of the evidence that the marriage was bona fide at its inception and was not entered into for the primary purpose of evading immigration laws. Pltf. Mot. at 2. However, Plaintiffs argue that once an applicant has met this burden, the burden of proof shifts to the government to "prove that the marriage was a sham with substantial and probative evidence." *Id.* at 3 (citing *Saleh v. Holder*, 54 F. Supp. 3d 1163 (D. Nev. 2014)). This is an incorrect statement of the applicable law.

The "substantial and probative evidence" standard applies in cases in which USCIS invokes 8 U.S.C. § 1154(c) and denies a Form I-130 petition based on a finding that the beneficiary of the petition has previously entered into or attempted to enter into a sham marriage:

> [N]o petition shall be approved if (1) the alien has previously been accorded, or has sought to be accorded, an immediate relative or preference status as the spouse of a citizen of the United States or the spouse of an alien lawfully admitted for permanent residence, by reason of a marriage determined by the Attorney General to have been entered into for the purpose of evading the immigration laws, or (2) the Attorney General has determined that the alien has attempted or conspired to enter into a marriage for the purpose of evading the immigration laws.

8 U.S.C. § 1154(c).[5] This provision "requires USCIS to deny an I–130 visa petition filed by a United States citizen on behalf of an alien if the USCIS determines that the alien has previously entered into a fraudulent marriage in order to evade immigration laws." *Velez-Duenas v. Swacina*, 875 F. Supp. 2d 1372, 1377–78 (S.D. Fla. 2012). "The statute imposes a one-strike rule, meaning that,

---

[5] The "substantial and probative evidence" language comes from the federal regulation interpreting section 1154(c):

> Section 204(c) [8 U.S.C. § 1154(c)] of the Act prohibits the approval of a visa petition filed on behalf of an alien who has attempted or conspired to enter into a marriage for the purpose of evading the immigration laws. The director will deny a petition for immigrant visa classification filed on behalf of any alien for whom there is substantial and probative evidence of such an attempt or conspiracy, regardless of whether that alien received a benefit through the attempt or conspiracy. Although it is not necessary that the alien have been convicted of, or even prosecuted for, the attempt or conspiracy, the evidence of the attempt or conspiracy must be contained in the alien's file.

8 C.F.R. § 204.2(a)(1)(ii).

after one prior finding of a sham marriage, the immigration authorities must reject all future efforts at an adjustment of status based on marital status." *Thawatchai Foythong v. Holder*, 743 F.3d 1051, 1053 (6th Cir. 2014). "A marriage entered into for the purpose of evading immigration laws thus precludes a beneficiary from ever receiving 'immediate relative' status from a subsequent I–130 petition." *Zemeka v. Holder*, 989 F. Supp. 2d 122, 129 (D.D.C. 2013). In other words, where an applicant has previously attempted to enter into a marriage for the purpose of evading immigration laws, USCIS must deny future petitions for that applicant if there is substantial and probative evidence of a prior unlawful attempt to evade immigration laws, even if subsequent petitions are based on bona fide marriages.

Here, USCIS did not rely on section 1154(c) in denying the second petition. The record shows that, while USCIS revisited the evidence submitted in support of the first petition, it considered all the evidence submitted in support of both petitions. *See, e.g.*, A.R. 10 ("Following an extensive review of your *entire filing history*, USCIS finds that you have not overcome the issues addressed in the denial of your first Form I-130, which called into question the bona fides of your marriage to the beneficiary at its inception.") (emphasis added); *id.* ("[A]s analyzed and stated herein, the documentary evidence of record submitted in support of *both* Forms I-130 fails to overcome the significant unresolved discrepancies between your testimony and the testimony of the beneficiary.") USCIS did not deny the second petition based on a finding that the first petition showed that Wood and Ko had entered into a sham marriage, nor did USCIS invoke section 1154(c) in any way in reaching its determination.

Accordingly, the burden of proof was on Wood to show by a preponderance of the evidence that his marriage to Ko was bona fide at its inception and was not entered into for the primary purpose of evading immigration laws.

### B. Substantial Evidence Analysis

Reviewing the USCIS's decision under the substantial evidence standard of review, the court finds that there was a rational connection between the facts and the agency's judgment, and that USCIS's decision was neither arbitrary nor capricious.

The inquiry of whether a marriage is valid for the purposes of immigration status focuses on whether the applicants "intend[ed] to establish a life together at the time they were married." *Bark v. Immigration & Naturalization Serv.*, 511 F.2d 1200, 1201 (9th Cir. 1975); *see also Damon v.*

11

*Ashcroft*, 360 F.3d 1084, 1088 (9th Cir. 2004). In *Nakamoto*, the Ninth Circuit listed examples of "objective evidence that would support a finding that the couple entered into the marriage with an intent to establish a life together," such as joint "insurance policies, property leases, income tax forms or bank accounts; testimony or other evidence regarding their courtship, wedding ceremony; and evidence concerning whether they shared a residence." *Nakamoto*, 363 F.3d at 882; *see also Damon*, 360 F.3d at 1088 (listing acceptable evidence of intent, including "insurance policies, property leases, income tax forms or bank accounts, and testimony or other evidence regarding courtship, wedding ceremony and whether [the applicants] shared a residence").

Courts have upheld denials of a Form I-130 where there was lack of evidence of the applicants' intent to establish a life together. For example, in *Yu An v. Napolitano*, 15 F. Supp. 3d 976, 983 (N.D. Cal. 2014), the court found that there was substantial evidence supporting USCIS's decision to deny a Form I-130 where there were "factual inconsistencies between submitted documents and parties' statements, no submission of any additional documentation in support of the marriage after the USCIS interview, . . . the existence of a forty-year age difference and the fact that the marriage was never consummated."[6] In *Ober-Galos v. Napolitano*, No. C-12-02902 DMR, 2015 WL 394626 (N.D. Cal. Jan. 29, 2015), the court found substantial evidence of marriage fraud in part based on inconsistent testimony as well as testimony that conflicted with the evidentiary record. 2015 WL 394626, at *3. Another court in this district found substantial evidence of marriage fraud based on contradictory statements in the record, unsworn letters from friends that lacked any meaningful details about the alleged marriage, lack of photographs of the couple, letters between the couple, or statements from wedding attendants. *Garcia-Lopez v. Aytes*, No. C 09-02592 RS, 2010 WL 2991720, at *5 (N.D. Cal. July 28, 2010), *aff'd sub nom. Garcia-Lopez v. Mayorkas*, 500 F. App'x 666 (9th Cir. 2012).

In the present case, there is substantial evidence supporting USCIS's determination of marriage fraud. Wood and Ko offered contradictory testimony about basic facts of their marriage, including how they met, how they decided to get married, and their activities just eight days prior to their interview. *See* 2018 Decision at 4. Wood admitted to lying under oath about whether Ko

---

[6] In *Yu An*, the non-citizen spouse had also submitted a written confession of marriage fraud. 15 F. Supp. 3d at 979. However, the court found there was substantial evidence supporting USCIS's decision "[e]ven without considering the written confession from [the plaintiff]," based on the factors cited above. *Id.* at 983.

12

shared his bedroom when the two first moved in together. *Id.* Wood also told USCIS officers that he and Ko stopped sharing a room about six months into their marriage (which would have been late 2011 or early 2012), and later submitted a declaration that they stopped sharing a room in early 2015. *Id.* at 9.

The documentation submitted by Plaintiffs in support of the two petitions and the NOID does not rebut the substantial evidence offered by USCIS. Although there is evidence of a joint bank account in both Wood and Ko's name, the documents do not establish that Wood and Ko ever commingled funds. The unsworn letters from various family members contain no meaningful details about the alleged marriage. The supposed text messages between Plaintiffs have no identifying information about the sender and recipient. The photographs of Wood and Ko are not captioned or dated, giving no meaningful indication of the context of these photographs or the span of time they cover. There is no evidence that the joint tax returns were ever filed with the IRS. The health insurance ID cards were obtained shortly before Wood submitted the second I-130 Form in 2013, and there is no evidence of any prior joint health insurance coverage between Wood and Ko.

Taken as a whole, the record demonstrates that USCIS relied on substantial evidence in articulating a rational connection between the facts it found and the determination it made. Plaintiffs fail to meet the high burden of showing evidence within the administrative record that is "so compelling" that the court must find that USCIS's decision was arbitrary or capricious.

Accordingly, the court finds that there is substantial evidence supporting USCIS's decision to deny Wood's second Form 1-130.

### C. Due Process

Plaintiffs put forward several arguments that USCIS denied them due process, including that: (1) Ko was deprived of her right to competent translation; (2) USCIS did not issue a NOID before denying Wood's first petition; and (3) USCIS did not notify Wood's attorney prior to examining Wood at his home on June 4, 2015.

The Due Process Clause of the Fifth Amendment provides that no person "shall be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "A threshold requirement to a substantive or procedural due process cla11im is the plaintiff's showing of a liberty or property interest protected by the Constitution." *Wedges/Ledges of California, Inc. v. City of Phoenix, Ariz.*, 24 F.3d 56, 62 (9th Cir. 1994). "[D]ue process is flexible and calls for such

procedural protections as the particular situation demands." *Gilbert v. Homar*, 520 U.S. 924, 930 (1997) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)). "'[D]ue process,' unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances." *Id.* (quoting *Cafeteria & Restaurant Workers v. McElroy*, 367 U.S. 886, 895 (1961)) (further quotation omitted). To determine what process is required, courts consider three factors: "First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

### 1. Inadequate Translation

Plaintiffs contend that Ko was deprived of a due process right to competent translation. Pltf. Mot at 12. They argue that her interpreter for the April 30, 2012 interview was a layperson, and also that Ko was allowed to testify in broken English, "despite her obvious limitations on understanding and speaking English." *Id.* Defendants respond that Ko's attorney provided the interpreter, and that Ko did not complain about the translation at any point during the administrative proceedings. Opp. at 5.

Here, Plaintiffs summarily claim that Ko had a due process right to competent translation and she was deprived of that right, but do not establish the basis for the alleged right or cite to any authority, nor do they explain how that right was violated here. Further, the allegation relates to the testimony that Ko offered in support of Wood's first Form I-130 petition in April 2012. Plaintiffs had ample time to challenge the proceedings based on inadequate translation and did not do so prior to the current appeal.[7] Plaintiffs do not cite to any portion of the record to establish which translations, if any, were inaccurate or misleading, and do not establish that harm to Plaintiffs resulted from the alleged deprivation. The court rejects Plaintiffs' due process challenge based on

---

[7] The 2012 decision denying Wood's first petition extensively lists the testimony which USCIS found to be inconsistent, including how Plaintiffs met; whether they shared a bedroom from the beginning of their marriage; whether Wood had met Ko's son in Los Angeles; where Wood and Ko were on April 22, 2012; and how the marriage proposal happened. A.R. 160-163. The decision identified these discrepancies as "significant," and also included instructions for filing an appeal. A.R. 160, 162.

14

inadequate translation.

### 2. Lack of Notice and Opportunity to Respond

Plaintiffs argue that their due process rights were violated because USCIS did not issue a NOID before issuing the decision denying the first I-130 Form petition.[8] Plft. Mot. at 11-12. They cite 8 C.F.R. § 103.2(b)(8)(iv), which provides:

> A . . . notice of intent to deny will be communicated by regular or electronic mail and will specify . . . the bases for the proposed denial sufficient to give the applicant or petitioner adequate notice and sufficient information to respond.

Defendants respond that they were not required to issue an NOID before denying Wood's first petition. They cite 8 C.F.R. § 103.2(b)(16)(i), which provides that:

> If the decision will be adverse to the applicant or petitioner and is based on derogatory information considered by the Service and of which the applicant or petitioner is unaware, he/she shall be advised of this fact and offered an opportunity to rebut the information and present information in his/her own behalf before the decision is rendered . . . .

Defendants argue that Wood was already aware of the information that USCIS considered in denying his first petition, namely the documents he submitted and the testimony that he and Ko gave, and therefore they were not required to issue a NOID. Opp. at 4. Neither party cited any caselaw in support of their arguments.

The court declines to address the parties' arguments about whether USCIS was required to issue an NOID prior to denying Wood's first petition, because Plaintiffs have not addressed the threshold issue of how failure to issue an NOID for Wood's first petition creates a due process concern with respect to the second petition. Plaintiffs again cite no caselaw in support of their argument; they merely point to an alleged procedural defect without explaining how it caused constitutional harm.

Accordingly, Wood has failed to establish a due process violation with respect to USCIS's failure to issue an NOID following its denial of his first petition.

//

---

[8] Plaintiffs also contend that the NOID that was issued before the denial of Wood's second petition was deficient because it "included only partial facts and inferences forming the basis of the decision to deny the petition, depriving Plaintiffs' [*sic*] a meaningful opportunity to rebut." *Id.* at 12. However, Plaintiffs do not offer any analysis as to why they believe NOID was deficient, and the court declines to speculate as to what their argument might be.

15

### 3. **Deprivation of Right to Counsel**

Plaintiffs argue that Wood was deprived of his due process right to counsel when USCIS failed to serve notice on Wood's attorney prior to USCIS's unannounced visit to Wood's residence on June 4, 2015. Pltf. Mot. at 12. They further argue that USCIS induced Wood to waive his right to have counsel present and interrogated him without the benefit of counsel. *Id.* Plaintiffs cite 8 C.F.R. § 292.5, which provides:

> Whenever a person is required by any of the provisions of this chapter to give or be given notice; to serve or be served with any paper other than a warrant of arrest or a subpoena; to make a motion; to file or submit an application or other document; or to perform or waive the performance of any act, such notice, service, motion, filing, submission, performance, or waiver shall be given by or to, served by or upon, made by, or requested of the attorney or representative of record, or the person himself if unrepresented.

Defendants argue that, "[w]hile CIS regulations grant a petitioner the right to be represented by an attorney, they do not require that counsel be presented or contacted in the first instance in every CIS interaction." Def. Mot. at 9 (citing *Osunsanya v. U.S. Citizenship & Immigration Servs.*, No. CIV A 06-10625-RWZ, 2007 WL 484864, at *4 (D. Mass. Feb. 12, 2007)).

Plaintiffs fail to establish a due process violation. They do not dispute that USCIS may conduct unannounced site visits as part of their investigation, and do not explain how notice to an applicant's attorney is required prior to an inspection when such notice would defeat the purpose of an unannounced site visit. The regulation they cite does not require that an applicant's attorney be notified under those conditions, and they do not cite to other legal authority establishing that requirement.

To the extent that Plaintiffs' argument relates to the USCIS officers having interviewed Wood without his attorney present, Plaintiffs again do not cite to any legal authority establishing a due process right to the presence of counsel in every interaction with USCIS. Even if such a right exists, Plaintiffs do not dispute that Wood signed a waiver to speak to the USCIS officers without his attorney present. A.R. 91. They summarily claim that Wood was "induced" to waive his right to counsel, but lay out no facts or arguments supporting that the waiver was in any way coerced, nor is there evidence in the record suggesting that the waiver was involuntary.

Accordingly, Plaintiffs have not established a due process violation based on deprivation of counsel.

# V. CONCLUSION

For the reasons stated herein, the court denies Plaintiffs' motion for summary judgment and grants Defendants' motion for summary judgment. The clerk is ordered to terminate this case.

**IT IS SO ORDERED.**

Dated: January 22, 2019



_____
Donna M. Ryu
United States Magistrate Judge